IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **R&M OIL AND SUPPLY, INC.,** | |
|     **Plaintiff,** | |
| v. | Case No. 26-CV-00231-SPM |
| **JACK RIDDLE,** | |
|     **Defendant.** | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Before the Court is an ex parte Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction filed by Plaintiff R&M Oil and Supply, Inc. ("R&M") (Doc. 5). R&M brings this action against Defendant Jack Riddle, alleging that he wrongfully transmitted and used its confidential trade secrets, thereby breaching his fiduciary duties and violating the Illinois Trade Secrets Act, 765 ILL. COMP. STAT. 1065/1 *et seq.*, the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* (Doc. 1). R&M now seeks both a TRO and a preliminary injunction prohibiting Riddle from possessing, using, or disseminating its alleged trade secrets. (Doc. 5). For the reasons set forth above, R&M's ex parte Motion for Temporary Restraining Order (Doc. 5) is **DENIED**. The Court reserves ruling on the Motion for Preliminary Injunction.

### RELEVANT FACTS AND PROCEDURAL HISTORY

The following facts are drawn from R&M's filings and are accepted as true for purposes of this review. (*See* Docs. 1, 5–6). R&M is a regional distributor of fuel and

energy products located in Southern Illinois. (Doc. 1, ¶ 12). Riddle was employed by R&M from March 2006 until February 2026 and, at all relevant times, served as the company's Operations Manager. (*Id.*, ¶¶ 2, 20, 33, 45). In that role, he oversaw operations, pricing, vendor relationships, and customer accounts. (*Id.*, ¶ 21). Because of these responsibilities, Riddle had access to R&M's confidential customer database, supplier pricing information, purchasing history, operational procedures, and other proprietary business information (collectively, "trade secrets"). (*Id.*, ¶¶ 2, 23).

R&M alleges that Riddle began seeking other employment in January 2026, and notified R&M on January 27, 2026, that he would be leaving for another opportunity. (*Id.*, ¶ 27). In the final days of his employment, Riddle accessed and transmitted R&M's trade secrets to his personal email account and personal cell phone without authorization. (*Id.*, ¶¶ 2–3). These trade secrets provide it with a competitive advantage in the fuel distribution market by enabling it to price services efficiently, maintain customer relationships, and compete within the broader energy services sector. (*Id.*, ¶¶ 1, 14–15). Disclosure of this information would allow a competitor to undercut R&M's pricing, solicit R&M's customers, and bypass R&M in the supply chain. (*Id.*, ¶ 15).

After leaving R&M, Riddle began working for ACE Transportation, Inc. ("ACE"), a specialized industrial logistics and private motor carrier that is also one of R&M's customers. (*Id.*, ¶¶ 4, 48–49, 51). While employed at ACE, Riddle used R&M's trade secrets to solicit direct price quotes from R&M's suppliers, potentially enabling ACE to circumvent R&M. (*Id.*, ¶¶ 53, 55). R&M contends that Riddle's continued possession, use, and potential dissemination of its trade secrets threaten irreparable

harm to its business relationships and competitive position. (*Id.*, ¶ 57). Specifically, R&M asserts that the information could allow Riddle—or any entity with whom he shares it—to identify and target R&M's key accounts, anticipate their needs, and solicit their business at strategically advantageous times. (*Id.*, ¶ 60). It could also enable direct negotiations with R&M's suppliers, allowing competitors to undercut R&M's pricing or avoid it entirely. (*Id.*, ¶ 61).

As a result, R&M seeks a temporary restraining order and preliminary injunction barring Riddle from possessing, using, or disclosing its trade secrets. (Doc. 5).

## APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 65 allows parties with a way to seek immediate, provisional relief to preserve the status quo pending a final decision on the merits, either through a TRO or preliminary injunction. FED. R. CIV. P. 65.(a)–(b). The core difference between a TRO and a preliminary injunction is that the former may be issued "before the adverse party can be heard in opposition." *Winnig v. Sellen*, 731 F. Supp. 2d 855, 856 (W.D. Wis. 2010). The standards governing issuance of a temporary restraining order and a preliminary injunction, however, are the same. *USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 (N.D. Ill. 2019).

Granting relief under Rule 65 is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023) (quoting *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021)). The purpose of a TRO or preliminary injunction is to "preserve the relative

positions of the parties until a trial on the merits can be held." *Tully v. Okeson*, 78 F.4th 377, 381 (7th Cir. 2023) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). The issuance of a TRO or preliminary injunction should also "minimize the hardship to the parties pending final judgment." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988).

Crucially, "[t]he party seeking a [TRO or] preliminary injunction bears the burden of showing that it is warranted." *Finch*, 82 F.4th at 578 (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). In the Seventh Circuit, "a district court engages in an analysis that proceeds in two distinct phases to decide whether such relief is warranted: a threshold phase and a balancing phase." *Valencia v. City of Springfield,* 883 F.3d 959, 965 (7th Cir. 2018). In order to proceed beyond the "threshold phase," the party seeking a TRO or preliminary injunction must satisfy three requirements, it must show that: "(1) it will suffer irreparable harm in the period before the resolution of its claim; (2) traditional legal remedies are inadequate; and (3) there is some likelihood of success on the merits of the claim." *HH Indianapolis, LLC v. Consolidated City of Indianapolis & Cnty of Marion*, 889 F.3d 432, 437 (7th Cir. 2018); *see also Finch*, 82 F.4th at 578 (citing *Speech First*, 968 F.3d at 637); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

Additionally, "[i]f it is plain that the party seeking the [TRO or] preliminary injunction has no case on the merits, the injunction should be refused regardless of the balance of harms." *Valencia*, 883 F.3d at 966 (quoting *Green River Bottling Co. v. Green River Corp.*, 997 F.2d 359, 361 (7th Cir. 1993)). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Moreover, regarding the likelihood of success on the merits, "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Id.* (quoting and disapproving *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)); *see also Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020) ("[A]n applicant for a preliminary relief bears a significant burden, even though the Court recognizes that, at such a preliminary stage, the applicant need not show that it definitely will win the case. A 'strong' showing thus does not mean proof by a preponderance—once again, that would spill too far into the ultimate merits for something designed to protect both the parties and the process while the case is pending. But it normally includes a demonstration of how the applicant proposes to prove the key elements of its case.").

If the threshold requirements are met, "the court must balance the equities, weighing the harm to the moving party if the requested injunction is denied against the harm to the nonmoving party and the public—including third parties—if it is granted." *Finch*, 82 F.4th 578 (citing *Cassell*, 990 F.3d at 545). In this second phase, "the court weighs the harm of denying an injunction to the movant against the harm of granting an injunction to the nonmovant." *Grubhub, Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023). This is accomplished via "a sliding scale—the greater

the movant's likelihood of success on the merits, the less the harms need be in its favor." *Id.* (citing *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021)). The court must also consider the public interest. *Id.*

Additionally, "[t]he Supreme Court has recognized that in some limited situations, a court may properly issue ex parte orders of brief duration and limited scope to preserve the status quo pending a hearing." *American Can Co. v. Mansukhani*, 742 F.2d 314, 321 (7th Cir. 1984) (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974); *Carroll v. President of Princess Anne*, 393 U.S. 175, 180 (1968)). That being said, "the circumstances in which an ex parte order should be granted are extremely limited" and "they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Mansukhani*, 742 F.2d at 321–22 (citing *Granny Goose Foods*, 415 U.S. at 438–39).

## ANALYSIS

As a threshold matter, because Defendant Riddle has not had an opportunity to respond, the Court cannot and will not decide R&M's Motion for Preliminary Injunction. Turning to R&M's request for a TRO, Federal Rule 65(b) is clear that a TRO should be issued without notice to the other party only if (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65(b). The Seventh Circuit has recognized that "[e]x parte temporary restraining orders are

most familiar to courts where notice to the adversary party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Mansukhani*, 742 F.2d at 322; *see* FED. R. CIV. P. 65(b).

Even if notice can be provided, an exception is provided for the "very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Mansukhani*, 742 F.2d at 322 (citing *In re Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979)). In *Vuitton*, the Second Circuit granted the plaintiff's motion for temporary restraining order because "it was highly probable that the [defendant trademark] infringer would dispose of the infringing goods in the few hours before the hearing." *Vuitton*, 606 F.2d at 5.

With respect to their Motion for a Preliminary Injunction (Doc. 5), R&M has not met either of the requirements in Federal Rule 65(b)(1). Namely, they have neither provided specific facts showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," nor have they provided certification as to the efforts made to provide notice and why notice should not be required in these circumstances. *See Vuitton*, 606 F.2d at 5. First, although R&M has laid out the potential damages of Riddle's continued use of their alleged trade secrets, they do not specify how this harm is irreparable (*i.e.*, unaddressable via the award of damages). Second, here, as in *Mansukhani*, the Defendant is clearly identifiable. R&M provides no argument as to how this case reflects the exception described in *Mansukhani* is applicable—either

that locating the known party before a hearing is difficult, or that such location would be "fruitless." *Mansukhani*, 742 F.2d at 322.

Although the Court is cognizant of R&M's concerns that either ACE or Riddle could solicit R&M's customers or attempt to bypass R&M in the supply chain, they have not provided sufficient justification for as extraordinary an equitable remedy as an ex parte TRO. Therefore, this Court holds that the granting of a TRO is inappropriate. Additionally, the Court will not reach the merits of his arguments, as they will be addressed when the Court rules on his Motion for Preliminary Injunction (Doc. 5) after the Defendant has been provided an opportunity to respond.

## CONCLUSION

For the reasons set forth above, R&M's ex parte Motion for Temporary Restraining Order (Doc. 5) is **DENIED**. The Court reserves ruling on the Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

**DATED:  March 6, 2026**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**